UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROY JOSEPH SEAVEY,**

    **Petitioner,**

v.                                              Case No. 8:23-cv-227-MSS-AEP

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

**O R D E R**

Seavey petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for sexual battery on a minor (Doc. 3), the Respondent asserts that the amended petition is untimely (Doc. 6), and Seavey replies that his actual innocence excuses the time bar. (Docs. 7 and 8) After reviewing the pleadings and the relevant state court record (Doc. 6-2), the Court **DISMISSES** the amended petition as time barred.

**PROCEDURAL HISTORY**

On October 8, 2010, a prosecutor filed an amended information charging Seavey with sexual battery on a minor. (Doc. 6-2 at 28) The amended information alleged that Seavey committed the crime "on or between the 1st day of June, 1980 and the 23rd day of January, [ ] 1982." (Doc. 6-2 at 28) A jury found Seavey guilty of the crime (Doc. 6-2 at 14), and the trial court sentenced Seavey to life in prison with the possibility of parole after serving twenty-five years. (Doc. 6-2 at 16–19, 61–64) The state appellate court affirmed Seavey's conviction and sentence. (Doc. 6-2 at 21)

1

The post-conviction court denied Seavey relief (Doc. 6-2 at 88–107), and the state appellate court affirmed. (Doc. 6-2 at 370) The post-conviction court dismissed Seavey's second post-conviction motion as untimely (Doc. 6-2 at 384–86), and the state appellate court denied Seavey's successive post-conviction petitions. (Doc. 6-2 at 412, 430) The state appellate court denied Seavey's petition alleging ineffective assistance of appellate counsel. (Doc. 6-2 at 74)

Seavey's federal petition follows. In his amended petition, Seavey asserts that the trial court violated his federal right to due process because evidence at trial, including the victim's testimony, did not prove the crime (Ground One), trial counsel deficiently performed by not presenting an expanded motion for judgment of acquittal and arguing that the trial court and the prosecutor lacked jurisdiction over the prosecution (Ground Two), the trial court and the prosecutor lacked jurisdiction over the case because evidence at trial, including the victim's testimony, did not prove the crime (Sub-claim A, Ground Three), the post-conviction court erroneously dismissed his post-conviction motion as untimely (Sub-claim B, Ground Three), documents attached to his second post-conviction motion prove his actual innocence (Ground Four). (Doc. 3-2 at 5–10)

ANALYSIS

**Cognizability**

A federal court can grant a petitioner habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

In Ground One, Seavey alleges the following facts in support of his claim (Doc. 3-2 at 5):

> The State's alleged victim denied the State's charging documentation under oath in open court. The State's charging document alleges that inappropriate behavior took place in 1980. The alleged victim alleges he only met the defendant in 1980; nothing more occurred for several years after meeting one another during the year of 1980. We only met one another during the year of 1980; nothing more took place during the year of 1980, other than meeting one another.

The Court construes the ground raised in the *pro se* petition as asserting that the trial court violated Seavey's federal right to due process by denying his motion for judgment of acquittal. Because the claim asserts a violation of a federal right, the claim is cognizable on federal habeas.

In Ground Two, Seavey alleges the following facts in support of his claim (Doc. 3-2 at 7):

> I asked for a court appointed public defender and was denied [after] being told I do not qualify for one years ago. Been on my own ever since. The State's alleged victim said nothing happened in 1980 when the State alleges the crime happened, other [than] meeting one another, terminating the State's and the judge's jurisdiction over this petitioner. [The] trial attorney [ ] motioned the court for an acquittal and was denied unjustly. [The] trial judge said he was willing to hear arguments, and my trial attorney sat down, relying on the State's denial of [the] charging document being denied by [the] alleged victim in vain.

The Court construes the ground raised in the *pro se* petition as asserting that trial counsel deficiently performed by not presenting an expanded motion for judgment of acquittal and arguing that the trial court and the prosecutor lacked jurisdiction over the prosecution. Because the ineffective assistance of counsel claim asserts a violation of a federal right, the claim is cognizable on federal habeas.

In Ground Three, Seavey alleges the following facts in support of his claim (Doc. 3-2 at 8):

> [Rule] 3.800(a) says I get to raise the question [that] my sentence is illegal at any time. No time limits. My 3.800(a) [motion] gets denied without prejudice; so, I get to use it over again, and I do. And I have, and the courts continue to deny the truth of their laws. The State's alleged victim denied the State's charging document against me, terminating the Court's and the State's jurisdiction over me. Yet, I'm in prison.

The Court construes the ground raised in the *pro se* petition as asserting that the post-conviction court erroneously dismissed as untimely his post-conviction motions asserting that the trial court and the prosecutor lacked jurisdiction over the prosecution. Whether the post-conviction court erroneously dismissed his post-conviction motion as untimely is an issue of state law. A federal court cannot grant a petitioner habeas relief for a violation of state law. *Estelle*, 502 U.S. at 67–68. However, because the argument presented in Ground Three is relevant to whether the petition is timely, the Court addresses the argument in the section addressing timeliness below.

In Ground Four, Seavey alleges the following facts in support of his claim (Doc. 3-2 at 10):

> The State's alleged victim denied the State's charging document in open court while telling the truth. I got shanghaied by the trial court and state prosecutor for a crime that didn't take place, when the State alleged it did. Nothing [the] victim testified to could be confirmed by law enforcement during the investigation. My 3.800(a) motion has been included in this motion; it has verifiable facts and legal documentation forms from law enforcement officers, and you can continue to look away from the truth. I cannot be in two places at the same time. It is an impossibility. And it alleges more like I was told to do by a different court. All can be verifiable if one seeks out the truth; it is there. It is in my 3.800(a) motion included in this petition for further review.

The Court construes the ground in the *pro se* petition as a claim of actual innocence. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Because actual innocence is relevant to whether the Court may review Seavey's other grounds even if the petition is time barred, the Court addresses the claim in the section addressing timeliness below.

**Timeliness**

Under the Antiterrorism and Effective Death Penalty Act, a one-year statute of limitation applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Seavey asserts that the statute of limitation does not apply because Congress enacted AEDPA in 1996, and the information charged him with a crime that occurred in 1980. (Doc. 3-2 at 11, 13) He contends that AEDPA does not retroactively apply to his conviction. (Doc. 3-2 at 11, 13) AEDPA applies to a petition filed after the effective date of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Because Seavey placed his petition in the hands of prison officials for mailing on January 31, 2023 (Doc. 1 at 1), the one-year statute of limitation under AEDPA applies to the petition. *See McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) ("Because McNair filed his federal habeas petition after April 24, 1996, this case is governed

5

by the Antiterrorism and Effective Death Penalty Act of 1996 . . . ."). Application of the statute of limitation under AEDPA to Seavey's petition does not violate the federal constitution's ex post facto clause because the one-year statute of limitation does not increase the "quantum of punishment" for the crime. *Cal. Dep't Corrs. v. Morales*, 514 U.S. 499, 507–08 (1995).

On May 2, 2012, the state appellate court affirmed Seavey's conviction and sentence in a decision without a written opinion. (Doc. 6-2 at 21) The state supreme court lacked jurisdiction to review the unelaborated decision. *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980). Seavey could have only sought further review in the U.S. Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020). He did not seek further review, and the time to seek that review expired ninety days after the state appellate court's decision — August 1, 2012. Sup. Ct. R. 13(1). Consequently, the limitation period started to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). On May 30, 2012, Seavey placed in the hands of prison officials for mailing a petition alleging ineffective assistance of appellate counsel. (Doc. 6-2 at 66–70) On July 18, 2012, the state appellate court denied the petition. (Doc. 6-2 at 74) The time to file a motion for rehearing expired fifteen days after the order denying relief entered — August 3, 2012. Fla. R. App. P. 9.330(a)(1). Consequently, the limitation period tolled from August 2, 2012, until August 3, 2012, and began to run the next day. *Nix v. Sec'y, Dep't Corrs.*, 393 F.3d 1235, 1237 (11th Cir. 2004).

On January 9, 2013, Seavey placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 6-2 at 76–86) At that point, the limitation period had run

6

158 days. The post-conviction court denied relief (Doc. 6-2 at 88–107), and the state appellate court affirmed. (Doc. 6-2 at 370) The limitation period tolled until mandate issued on post-conviction appeal — May 18, 2016.[1] *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). The limitation period began to run the next day.

The limitation period continued to run for 207 days and expired on December 12, 2016. Seavey placed in the hands of prison officials for mailing his federal petition on January 31, 2023. (Doc. 1 at 1) Consequently, his federal petition is untimely.

Seavey placed in the hands of prison officials for mailing a second post-conviction motion on September 20, 2018 (Doc. 6-2 at 372–81), and state habeas petitions on June 29, 2020, and September 28, 2020. (Doc. 6-2 at 396–410, 414–28) Because Seavey filed the post-conviction motion and petitions after the limitation period expired, the filings did not toll the limitation period. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Also, the post-conviction court dismissed the motion as untimely (Doc. 6-2 at 385):

> The Defendant claims that his sentence is illegal. Specifically, the Defendant argues that his sentence is illegal because the victims lied about their testimony and that the evidence was insufficient to support his convictions. Rule 3.800(a) is limited to claims that a sentence itself is illegal, without regard to the underlying charges/convictions or the elements of the underlying charges/convictions. *Coughlin v. State*, 932 So. 2d 1224, 1226 (Fla. 2d DCA 2006); *see Shortridge v. State*, 884 So. 2d 321 (Fla. 2d DCA 2004) (holding that "because the two claims raised by [Defendant] relate to convictions and not sentences, they are not

---

[1] Even though the record does not contain a copy of the mandate, the Court takes judicial notice of the state appellate court docket which shows that the mandate issued on May 18, 2016. *Seavey v. State*, No. 2D14-4881 (Fla. 2d DCA), *available at* https://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Number&Court=2&CaseYear=2014&CaseNumber=4881.

> cognizable under rule 3.800(a)"). The Defendant's claims relate to his underlying conviction, not his sentence and must be dismissed.
>
> Pursuant to Florida Rule of Criminal Procedure 3.850, a defendant may bring a timely motion challenging the legality of his conviction. *See* Fla. R. Crim. P. 3.850. In such a motion for post-conviction relief, "[t]he defendant bears the burden of establishing a prima facie case based upon a legally valid claim." *Griffin v. State*, 866 So. 2d 1, 9 (Fla. 2003); *State v. Young*, 932 So. 2d 1278, 1282–83 (Fla. 2d DCA 2006) (holding this burden "cannot be overcome by mere speculation"). As such, the defendant must allege specific facts entitling him to relief. *Griffin*, 866 So. 2d at 9 (holding that "mere conclusory allegations" were insufficient in a post-conviction motion). A Rule 3.850 motion must be filed within two years after the judgment and sentence become final, subject to three very specific exceptions. Fla. R. Crim. P. 3.850(b); *State v. Green*, 944 So. 2d 208, 210 (Fla. 2006). Pursuant to Rule 3.850(b), the two-year period for filing a motion for post-conviction relief begins to run thirty days after the defendant is sentenced or, if the defendant appealed his judgment and sentence, after the mandate issues from a direct appeal. *See Beaty v. State*, 701 So. 2d 856 (Fla. 1997). In this case, the Defendant's judgment and sentence became final when the mandate issued in 2012. Therefore, the Defendant's instant motion, filed on September 19, 2018, is untimely and procedurally barred. *See* Fla. R. Crim. P. 3.850.

Because the post-conviction court determined that Seavey untimely filed the motion, the motion was not "properly filed" under Section 2244(d)(2) and did not toll the limitation period. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("[W]e hold that time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's [post-conviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).").

Seavey asserts that the post-conviction court erroneously dismissed the motion as untimely. (Doc. 3-2 at 8–9) Whether a post-conviction motion is timely is an issue of state law, and a determination of state law receives deference in federal court. *Jones v. Sec'y, Fla.*

8

*Dep't Corrs.*, 906 F.3d 1339, 1350 (11th Cir. 2018) ("In short, the state court ruled that the Rule 3.850 Motion was untimely, and we are required to defer to that ruling. That necessarily means that the motion wasn't 'properly filed,' and thus it didn't toll AEDPA's one-year statute of limitations.") (citations omitted).

In his motion titled "Motion to Correct Illegal Sentence 3.800(a)," Seavey asserted that the trial court erroneously denied his motion for judgment of acquittal because the victim's testimony at trial did not prove the crime charged in the information. (Doc. 6-2 at 372–81) He requested that the post-conviction court "overturn" and "dismiss" his conviction. (Doc. 6-2 at 375, 381) Because Seavey challenged his conviction, the post-conviction court correctly construed the motion as a motion for relief under Rule 3.850, Florida Rules of Criminal Procedure. Because mandate issued on direct appeal in 2012 and Seavey placed the construed motion in the hands of prison officials for mailing on September 20, 2018 (Doc. 6-2 at 372), the post-conviction court correctly dismissed the construed motion as untimely. *Beaty v. State*, 701 So. 2d 856, 857 (Fla. 1997).

**Actual Innocence**

Seavey asserts that actual innocence excuses the time bar. (Doc. 3-2 at 10–11) As explained above, "actual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of

9

constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. "'[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Rozzelle v. Sec'y, Fla. Dep't Corrs.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Seavey asserts that the victim's testimony at trial did not prove the crime charged in the information and that the statute of limitation expired before the prosecutor filed the charge. (Doc. 3-2 at 5, 10, 12) He further contends that the following documents demonstrate that law enforcement was unable to corroborate the victim's accusations (Doc. 3-2 at 10, 22–29, 33–34): (1) a transcript containing testimony by T.M. at a pretrial hearing, (2) a police report documenting Seavey's arrest in 1982, and (3) a letter signed by Seavey's mother in 2022.

**Victim's Testimony at Trial**

The amended information charged Seavey with sexual battery (Doc. 6-2 at 28):

> Ron Seavey in the County of Pinellas and the State of Florida, on or between the 1st day of June 1980 and the 23rd day of January, in the year of our Lord, nineteen hundred eighty-two, on one or more occasions, did, while being eighteen years of age or older, commit a sexual battery upon [T.M.], a child eleven years of age or younger by placing the penis of [T.M.] into or in union with the mouth of Roy Seavey and/or placing the penis of Roy Seavey into or in union with the anus of [T.M.]; said act being done in a lewd, lascivious or indecent manner; contrary to Chapter 794.011(2), Florida Statutes, and against the peace and dignity of the State of Florida.

At trial, T.M. testified that, in June of 1980 when he was ten, he moved to Pinellas County to live with his father. (Doc. 6-2 at 177) T.M.'s step-brother, who was nineteen or twenty, was Seavey's friend. (Doc. 6-2 at 178) Seavey, who was also nineteen or twenty, visited T.M.'s family for the Fourth of July in 1980. (Doc. 6-2 at 178) Seavey acted friendly toward T.M. and took interest in T.M.'s train sets, police cars, and other toys. (Doc. 6-2 at 179–80) A few weeks later, Seavey invited T.M. to his house to play with a train set and look at motorcycles in his backyard. (Doc. 6-2 at 180) A few weeks later, Seavey invited T.M. to his house again to look at model cars. (Doc. 6-2 at 182) T.M. looked at Seavey's model cars and asked to go home because he wanted to watch a television show. (Doc. 6-2 at 182–83) Seavey suggested that they watch the television show together at Seavey's house. (Doc. 6-2 at 183)

While watching the television show, Seavey removed T.M.'s shorts and underwear and placed T.M.'s penis into his mouth. (Doc. 6-2 at 185) Seavey removed his own clothes, placed T.M. on top of him, and rubbed their genitals together, causing T.M. to ejaculate. (Doc. 6-2 at 186) Seavey told T.M. that "he had gotten permission from [T.M.'s] parents, that he knew [T.M.] was having trouble adapting from Michigan to Florida and making new friends and stuff and that [T.M.'s] parents felt that it was right." (Doc. 6-2 at 185) T.M. did not tell his parents what happened because he had never spoken with his parents about sex, did not know how they would react, and thought that they already knew about it. (Doc. 6-2 at 186–87)

Every few weeks for about a year, T.M. returned to Seavey's home, and Seavey performed oral sex on T.M., and T.M. performed oral sex on Seavey. (Doc. 6-2 at 187) Seavey bought T.M. model cars and other gifts. (Doc. 6-2 at 194) Either just before or just

11

after T.M.'s twelfth birthday in January of 1982, Seavey invited T.M. over to his new houseboat. (Doc. 6-2 at 191, 193) T.M. performed oral sex on Seavey, Seavey performed oral sex on T.M., and Seavey placed his penis in T.M.'s anus for the first time and ejaculated. (Doc. 6-2 at 193–94) The sexual relationship between Seavey and T.M. continued until T.M. turned fifteen. (Doc. 6-2 at 195)

In 1995, T.M. pleaded guilty to a sex crime and received a probationary sentence. (Doc. 6-2 at 196) In 1999, during court-ordered counseling, T.M. disclosed for the first time that Seavey sexually battered him. (Doc. 6-2 at 196) After T.M. disclosed the sexual battery, the trial court modified the conditions of his probation to permit him to contact the victim in T.M.'s case. (Doc. 6-2 at 201) However, T.M. had not disclosed the sexual abuse to police or the judge when the trial court modified the conditions. (Doc. 6-2 at 207–08)

In 2005, T.M.'s probationary sentence expired. (Doc. 6-2 at 197) In 2009, a prosecutor charged T.M. with failing to register as a sexual offender because T.M. moved to a new house and failed to notify law enforcement. (Doc. 6-2 at 198) After T.M. admitted his mistake and registered, the prosecutor reduced the felony charge to a misdemeanor. (Doc. 6-2 at 198) T.M. reported Seavey's sexual abuse to the prosecutor after the reduction of the charge. (Doc. 6-2 at 208) T.M. did not believe that he had received any benefit for testifying against Seavey. (Doc. 6-2 at 197–99)

At Seavey's trial, the prosecutor presented testimony by D.R. as evidence of other crimes, wrongs, or acts.[2] On June 24, 1989, when he was twelve, D.R. moved to Florida from Quebec, Canada to live with family friends and learn English. (Doc. 6-2 at 212–15) In September or October of 1989, D.R. met Seavey, who recently moved to the neighborhood.

---

[2] *See Williams v. State*, 110 So. 2d 654 (Fla. 1959).

(Doc. 6-2 at 215–16) Seavey gave D.R. a radio, model cars, a ring, and other gifts and took him to Walmart and game arcades. (Doc. 6-2 at 217–19) After D.R. and Seavey became friends, Seavey asked D.R about sex and masturbation. (Doc. 6-2 at 219–20)

During one visit, Seavey locked D.R. in his bedroom, placed D.R. on his bed, and held D.R. like a baby. (Doc. 6-2 at 220–21) Seavey gave D.R. a Playboy magazine, took off D.R.'s pants, and performed oral sex on D.R. until he ejaculated. (Doc. 6-2 at 221–22) When Seavey asked D.R. to perform oral sex on him, D.R. ran out of Seavey's house. (Doc. 6-2 at 223) D.R. immediately told the family friend who was caring for him about the sexual battery. (Doc. 6-2 at 223) The same day or the next day, the family friend took D.R. to the sheriff's office to report the crime. (Doc. 6-2 at 224)

The information charged Seavey with sexually battering T.M. between June 1, 1980 — around the time when T.M. moved to Florida — until January 23, 1982 — just before T.M. turned twelve. (Doc. 6-2 at 28) The information alleged that Seavey sexually battered T.M. by performing oral sex on T.M. or engaging in anal sex with T.M. when T.M. was eleven or younger. (Doc. 6-2 at 28) T.M. testified that he moved to Florida when he was ten and first went to Seavey's home a few weeks later. (Doc. 6-2 at 177–78, 180) A few weeks after the first visit, Seavey invited T.M. over to his home again and performed oral sex on T.M. (Doc. 6-2 at 182–86) Seavey continued to perform oral sex on T.M. until T.M. was fifteen. (Doc. 6-2 at 195)

T.M. further testified that just before or just after his twelfth birthday, Seavey performed anal sex on him. (Doc. 6-2 at 191–94) Even if this testimony does not square with the period when the information alleged that the crime occurred, the information alternatively alleged that Seavey performed oral sex on T.M. when he was younger than

13

twelve. (Doc. 6-2 at 8) T.M. testified that Seavey began to perform oral sex when T.M. was ten and continued until he was fifteen. (Doc. 6-2 at 187, 195) This testimony, corroborated by D.R.'s testimony that Seavey groomed and sexually battered him, proved Seavey's guilt. § 794.011(1)(f), (2), Fla. Stat. (1979). *Price v. State*, 995 So. 2d 401, 404–05 (Fla. 2008) ("The offense of sexual battery may be proven by alternative methods, so it follows that the information should be free to include such alternative bases for conviction."). *See also* § 90.404(2)(b)(1), Fla. Stat. (2010) ("In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.").

### Statute of Limitations

Seavey asserts that the statute of limitation for the crime expired before the prosecutor filed the sexual battery charge. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Even if the statute of limitation barred the criminal charge as a matter of law, Seavey fails to demonstrate actual innocence.

Also, "the limitations period in effect at the time of the incident giving rise to the criminal charges controls the time within which prosecution must be begun." *Perez v. State*, 545 So. 2d 1357, 1358 (Fla. 1989) (citing *Rubin v. State*, 390 So. 2d 322 (Fla. 1980)). The information charged Seavey with committing sexual battery between June 1, 1980 and January 23, 1982 by placing T.M.'s penis in his mouth and by placing his penis in T.M.'s anus, when T.M. was eleven or younger. (Doc. 6-2 at 8) T.M. testified that Seavey first performed oral sex on him in 1980 when he was ten and first engaged in anal sex with him

14

in 1982 just before or just after he turned twelve. (Doc. 6-2 at 177–78, 180, 182–86, 191–94) On July 6, 2010, the prosecutor filed the information charging the crime. (Doc. 6-2 at 8) Between 1980 and 1982, sexual battery on a victim who is eleven or younger was a "capital felony."[3] § 794.011(2), Fla. Stat. (1980–82). Under Section 775.15(1), Florida Statutes (1980–82), no limitation applied to a capital felony:

> A prosecution for a capital or a life felony may be commenced at any time. In the event the death penalty is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, all crimes designated as capital felonies shall be considered life felonies for the purposes of this section, and prosecution for such crimes may be commenced at any time.

Consequently, the statute of limitation did not expire before the prosecutor filed the information charging Seavey with sexual battery.

### Other Documents

Seavey contends that documents attached to his petition prove his actual innocence. (Doc. 3-2 at 10) Seavey attaches excerpts of a transcript of testimony by T.M. at a pretrial hearing (Doc. 3-2 at 22–27), a police report documenting Seavey's arrest in 1982 (Doc. 3-2 at 29, 33), and a letter signed by Seavey's mother in 2022. (Doc. 3-2 at 34)

Because Seavey could have discovered before trial the testimony by T.M. at a pretrial hearing and the police report documenting Seavey's arrest in 1982, neither is "new reliable evidence" that demonstrates actual innocence. *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable

---

[3] In 2008, *Kennedy v. Louisiana*, 554 U.S. 408, 413 (2008), held that the Eighth Amendment prohibits the death penalty for "the rape of a child where the crime did not result, and was not intended to result, in death of the victim."

15

investigation.'") (citation omitted). Even if both documents could qualify as "new" evidence, neither demonstrates actual innocence.

### Excerpts of Transcript of Testimony by T.M.

In the first excerpt, T.M. testified that he was "around twelve years old" when Seavey first engaged in anal sex with him. (Doc. 3-2 at 22–23) As explained above, even if T.M.'s testimony concerning anal sex did not prove sexual battery, the information alleged in the alternative that Seavey sexually battered T.M. by performing oral sex. T.M. testified that Seavey performed oral sex on him starting when he was ten until he was fifteen.

In the second excerpt, T.M. testified that Seavey did not sexually batter him when he first met Seavey. (Doc. 3-2 at 24) At trial, T.M. testified that Seavey only showed him trains and motorcycles during the first visit (Doc. 6-2 at 181) and sexually battered him during the second visit. (Doc. 6-2 at 180–86)

In the third excerpt, T.M. testified that T.M. was approximately twelve when Seavey purchased gifts for him. (Doc. 3-2 at 26) At trial, T.M. testified that Seavey continued to sexually batter him until he turned fifteen and, during this time, Seavey bought him gifts. (Doc. 6-2 at 194–95)

Because T.M.'s testimony at the pretrial hearing does not meaningfully refute T.M.'s testimony at trial, the transcript excerpts do not demonstrate Seavey's actual innocence. *See Munchinski v. Wilson*, 694 F.3d 308, 335 (3d Cir. 2012) ("[M]ere impeachment evidence is generally not sufficient to show actual innocence by clear and convincing evidence.") (quoting *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992)).

### Police Report

In the police report, an officer states that, on February 24, 1982, he pulled over Seavey for riding a motorcycle without a rear-view mirror. (Doc. 3-2 at 29) The officer discovered that Seavey's license was suspended and that two warrants had issued for his arrest. (Doc. 3-2 at 33) Seavey told the officer that he left Florida in October of 1981 and returned in February of 1982. (Doc. 3-2 at 33) Seavey contends that the police report proves that he was not in Florida when the victim claimed that the sexual battery occurred. (Doc. 3-2 at 30–32)

The amended information alleged that Seavey sexually battered T.M. between June 1, 1980, and January 23, 1982. (Doc. 6-2 at 28) T.M. testified that he went over to Seavey's home for the first time a few weeks after July 4, 1980, and that Seavey performed oral sex on him for the first time a few weeks later during his second visit. (Doc. 6-2 at 180–86) T.M. testified that Seavey continued to perform oral sex on him every few weeks for a year. (Doc. 6-2 at 187) Even if Seavey left Florida in October of 1981, the evidence proved that Seavey sexually battered T.M. between August of 1980 and September of 1981. Seavey had the opportunity to commit the crime during the period alleged in the information, even if he left Florida in October of 1981. Also, Seavey fails to present evidence that demonstrates that he actually left Florida in October of 1981. The report states that the computer showed that Seavey's license was suspended on November 11, 1981. (Doc. 3-2 at 33) Seavey may have attempted to exculpate himself by telling the police officer that he left Florida in October of 1981 and returned only a couple of weeks before the traffic stop. (Doc. 3-2 at 33) Consequently, Seavey's statement to the police officer is not reliable evidence that demonstrates his actual innocence. *Schlup*, 513 U.S. at 324.

### Letter by Seavey's Mother

In the letter dated October 18, 2022, Seavey's mother states that, when Seavey was twenty-six, he was in a motorcycle accident. (Doc. 3-2 at 34) Seavey suffered a serious brain injury, shattered his wrists, and became comatose, and doctors did not expect him to live. (Doc. 3-2 at 34) Seavey's mother told trial counsel about the accident, and trial counsel responded that, "the court didn't need to know about the accident" and "it would go against [Seavey]." (Doc. 3-2 at 34) Even if Seavey suffered injuries when he was twenty-six, the victim testified that, at the time of the sexual battery, Seavey was nineteen or twenty. (Doc. 6-2 at 177–78, 180) Consequently, the letter does not demonstrate actual innocence.

### Additional Arguments

Seavey contends that another individual confided in him that he sexually battered T.M. (Doc. 3-2 at 28) He further contends that he could not have committed the sexual battery because he left Florida in 1980 after using counterfeit money to buy back his stolen motorcycle from a Tampa Bay motorcycle gang. (Doc. 3-2 at 30) He contends that he traveled with a carnival between 1980 and 1982, was arrested in Florida in 1982 for two warrants, and remained in jail until 1983. (Doc. 3-2 at 31–32) Seavey's trial occurred in 2010, and Seavey could have presented at trial evidence proving his departure from Florida. (Doc. 6-2 at 14) Seavey's self-serving statements not supported by reliable evidence do not demonstrate his actual innocence.

Because Seavey fails to demonstrate actual innocence, his amended petition (Doc. 3) is untimely. Accordingly, Seavey's amended petition (Doc. 3) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Seavey and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Seavey neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on January 25, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE